**LAW OFFICES OF LAUREN GOLDBERG, PLLC**
3 COLUMBUS CIRCLE, 15TH FLOOR
NEW YORK, NEW YORK 10019
lg@lgoldberglaw.com

Telephone: (646) 452-8380                          Facsimile: (646) 452-8663

May 18, 2026

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

> Re:    **Celi v. Advance Auto Parts Inc. et al**
>          **25 CV 6118 (DG)(PK)**

Dear Judge Kuo,

Pursuant to the Court's Order issued on May 15, 2026, Plaintiff writes to outline the discovery issues that remain unresolved. There are primarily two categories of outstanding discovery: (1) documents relevant to the relationship between Advance Auto Parts, Inc. ("AAPI") and its wholly owned subsidiary, Advance Stores Company Incorporated ("ASCI"), and (2) all relevant communications.

**Parent–Subsidiary Discovery**

To hold AAPI liable, Plaintiff must establish that AAPI and ASCI operated as a single integrated employer. Courts consider four factors in evaluating the relationship: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial support." *Mangahas v. Eight Oranges Inc*., 754 F.Supp. 3d 468, 486 (S.D.N.Y. 2024).  Defendants placed the parent–subsidiary relationship at issue in their Answer, yet they now refuse to provide the documents and information supporting their own assertions.

Initially, Defendants claimed that they did not need to produce any parent–subsidiary discovery because "public documents" provided the necessary information. After two meet-and-confer discussions and various emails, Defendants agreed to revisit that position. They have since produced only a handful of documents. Defendants continue to withhold the most basic information about AAPI's control over ASCI's HR, financial, and operational functions.

**A. Interrogatories**

Plaintiff served interrogatories directly related to the degree of control the parent company exercises over the subsidiary. Defendants have not provided substantive answers to interrogatories 8, 9, 10, 11, 12, 13, 15, and 16-19. See Exhibit 1- Plaintiff's relevant interrogatory requests and Defendants' responses. **Interrogatory 8** requests every employment-

1

related policy and/or decision that AAPI controls over ASCI as Defendants admitted in their Answer. In their Answer, Defendants stated that AAPI "exercises operational control over Advance Stores Incorporated with respect to certain employment-related policies and decisions." See Defendants' Answer, Response to ¶ 13. **Interrogatory 9** asks for the percentage of AAPI's assets and liabilities attributable to ASCI, a figure Defendants referenced in their Answer. See Defendants' Answer. Response to ¶ 16). **Interrogatory 10** asks for the names and titles of AAPI employees involved in the hiring, firing, discipline, or termination of ASCI employees. AAPI only employs a handful of C-Suite employees so this is not a burdensome question. **Interrogatory 11** asks for AAPI's role in ASCI's HR functions, including hiring, firing, disciplining, and promoting. For example, if Kristen Soler, AAPI's Chief Human Resources Officer, (or any other AAPI employee) played any role in ASCI terminations including Plaintiff's, Defendants should provide that information. **Interrogatory 12** asks for AAPI's role in drafting job descriptions or hiring criteria for ASCI. **Interrogatory 13** asks for the reporting relationship between ASCI HR personnel and any management-level employee at AAPI. **Interrogatory 15** asks for the names of any AAPI employees who supervised or managed any ASCI employee. **Interrogatory 16** asks for AAPI's role in approving ASCI's budgets, labor costs, or compensation structure which ties directly to the amount of control AAPI has over ASCI. **Interrogatory 17** asks whether the two entities share office space, servers, IT systems, or platforms such as Workday. For example, upon information and belief, Workday is a shared platform between the two entities that allows AAPI to monitor and evaluate almost every metric of ASCI. **Interrogatory 18** asks for the financial, accounting and payroll functions AAPI performs for ASCI. Upon information and belief, AAPI has set up and provides all the accounting and payroll functions for ASCI. **Interrogatory 19** asks for the forms AAPI requires ASCI to use in its daily operations. Upon information and belief, all the forms that are on Workday, which were used by Plaintiff's store on a daily basis, are forms that AAPI requires ASCI stores to use.

Defendants have suggested that they will provide this information through a Rule 30(b)(6) deposition in lieu of answering interrogatories. While that might be Defendants' preferred method, Defendants cannot choose to avoid their obligation to answer the interrogatories simply because they prefer to answer the questions in a different format.

### B. Document Requests

Plaintiff also served corresponding document requests on the same parent–subsidiary topics. Defendants have not provided full substantive answers to document requests 35, 38, 39, 40, 42, 43, 44, 45,46, 47, 48, 49, 50,51, 52, 53, 55, 56, and 57. See Exhibit 2- Plaintiff's relevant document requests[1] and Defendants' responses. In order to keep this letter concise, I will provide a brief overview of the documents that should have been provided if they exist: documents

---

[1] In the interest of trying to reach a compromise, Plaintiff agreed to limit many of her documents requests to Plaintiff's store rather than all of ASCI.

showing AAPI's involvement in HR decisions at Plaintiff's store; documents showing AAPI's role in payroll, benefits, leave, accommodation, or compliance; documents supporting statements Defendants made in their Answer, including their statements about operational control and asset/liability attribution; documents showing AAPI's approval or oversight of ASCI's financial operations; communications between AAPI and ASCI regarding HR matters; documents showing shared HR, IT, payroll, benefits, training, or risk-management services; documents showing shared office space, servers, email domains, or IT infrastructure; documents reflecting training, compliance audits, or performance metrics imposed by AAPI; marketing materials describing ASCI as part of AAPI; documents showing AAPI's role in drafting job descriptions or hiring criteria; forms AAPI required ASCI to use; and documents showing financial, accounting, or payroll functions performed by AAPI for ASCI.

**Relevant Communications and the ESI Protocol**

The second category of outstanding discovery consists of all relevant communications. Defendants have shifted their position on whether they wanted to require an ESI protocol for their document production. In their written discovery responses, Defendants first stated that an ESI protocol would be necessary for document production. During our first meet-and-confer on April 10, 2026, Defendants then stated the opposite: production would not be contingent on an ESI protocol.  About two weeks passed with no documents provided. Defendants then reversed course again and stated that they wished to proceed by negotiating a joint ESI protocol.

Defendants first introduced a proposed ESI plan on April 27, 2026. Plaintiff responded with comments on April 29, 2026. Defendants responded on May 8, 2026, and Plaintiff then sent her revisions on May 10, 2026 and has not heard back. While there has been some movement, the plan is still not finalized. It is not within Plaintiff's control to know whether it will take another three weeks—or longer—to finalize an ESI protocol, which would place us well into June.

Plaintiff's issue is not with the ESI plan itself, but with the delay. When Plaintiff served her discovery responses in March 2026, she produced over 1,000 pages of texts and emails. Plaintiff still has not received any internal communications from Defendants that do not include Plaintiff on the email chain nor have they even produced the 1,000 communications that Plaintiff produced which are also in Defendants' possession. Once Plaintiff receives Defendants' communications, she must have adequate time to review what is expected to be a substantial production, identify deficiencies, and serve follow-up requests before scheduling and completing multiple depositions.

At the current pace, Plaintiff anticipates that she will not receive Defendants' documents until late June. Plaintiff should then be given three months to review the documents and serve any follow-up requests.  Depositions—of which Plaintiff anticipates at least six days—would likely not be able to begin until late September at the earliest. This is again dependent on Plaintiff receiving the first full production in mid-June.

For these reasons, Plaintiff respectfully requests that the Court order Defendants to provide full responses to the interrogatories and produce all documents responsive to Plaintiff's document requests. Plaintiff also requests that she be afforded sufficient time to receive the ESI production, review it, serve any necessary follow-up requests, and schedule the six anticipated days of depositions.

Respectfully submitted,

Lauren Goldberg
Attorney for Plaintiff