

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York  10018
**T** (212) 218-5500
**F** (212) 218-5526

hwexler@seyfarth.com
T (212) 218-3332

www.seyfarth.com

May 19, 2026

<u>**VIA ECF**</u>

The Honorable Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Lucille Celi v. Advance Auto Parts, Inc. et al.*
      <u>Civil Action No.: 1:25-cv-06118-DG-PK</u>

Dear Judge Kuo:

This Firm represents Defendants Advance Auto Parts, Inc. and Advance Stores Company Incorporated (collectively, "Defendants") in the above-referenced matter.  In accordance with Your Honor's Docket Order dated May 15, 2026 (ECF No. 29), Defendants write in response to Plaintiff Lucille Celi's ("Plaintiff") May 18, 2026 letter regarding the parties' alleged unresolved "discovery issues," and to raise an additional point of contention which is missing from Plaintiff's letter—the scope of Plaintiff's emotional distress claim.  (*See* ECF No. 30.)[1]

### I.    Relationship Between Advance Auto Parts, Inc. and Advance Stores Company Incorporated

Plaintiff first alleges that Defendants "continue to withhold the most basic information about" the relationship between Advance Auto Parts, Inc. and its wholly-owned subsidiary, Advance Stores Company Incorporated.  (*See* ECF No. 30 at 1.)  However, this is assertion is incorrect.

*First*, Defendants have already admitted several allegations in Plaintiff's Amended Complaint and Jury Demand regarding the relationship between both entities, thereby leaving less for Plaintiff to allegedly have to "establish."  (*See* ECF No. 19.)  Among other things, Defendants admitted that both entities "operate as a single unified enterprise" and confirmed that

---

[1] At the outset, Defendants deny that they have refused to prepare a joint letter to the Court regarding the parties' outstanding discovery.  Defendants merely suggested meet and confers in the hope of reaching an agreement with Plaintiff and proposed formalizing an ESI protocol and running a hit report before requesting an extension of the current discovery schedule on a whim.  The undersigned counsel had an out of state arbitration when Plaintiff's counsel filed her letter request with the Court on May 14, 2026, and Defendants' other counsel, Ashley Casey, was out of the state on vacation.  These absences were known to Plaintiff's counsel.

The Honorable Peggy Kuo
May 19, 2026
Page 2

Advance Auto Parts, Inc. "exercises operational control" over Advance Stores Company Incorporated's employment-related policies and labor relations.  (*See id.* at ¶¶ 12-17.)

*Second*, Defendants have produced reasonable documentation within their possession and scheduled meet and confers with Plaintiff to further explain the relationship between both entities, including the fact that Advance Auto Parts, Inc. is a public company with publicly available United States Securities Exchange ("SEC") filings.  To this end, Defendants have produced Advance Auto Parts, Inc.'s Forms 10-K and 10-K/A which were filed with the SEC for years 2023 and 2024.  Defendants also produced a November 2022 Salaried TM Handbook, which was applicable to Plaintiff during her employment with Advance Stores Company Incorporated, and informed Plaintiff multiple times that such Handbook was authored by Advance Auto Parts, Inc.  Moreover, after a meet and confer with Plaintiff's counsel to better understand the specific documents Plaintiff was looking to obtain, Defendants produced the exact documents Plaintiff requested; namely, offer letters for specific employees, organizational charts from Workday, and blank employment-related forms which bear Advance Auto Parts, Inc.'s watermark.

*Third*, Defendants have repeatedly stated that they are willing to meet and confer on Plaintiff's requests if there are specific documents Plaintiff is looking to obtain, especially given the broad nature of Plaintiff's requests.  Beyond what has already been produced, Defendants are not aware of existing documents which relate directly to Advance Auto Part, Inc.'s control over Advance Stores Company Incorporated's "HR, financial, and operational functions," as Plaintiff alleges.  (*See* ECF No. 30 at 1.)  These are not documents that exist in the ordinary course of business as Plaintiff seems to assume.

*Finally*, Plaintiff's interrogatories call for narrative responses that are best accomplished through the deposition of a corporate representative pursuant to Federal Rule of Civil Procedure ("Rule") 30(b)(6).  Defendants suggested a Rule 30(b)(6) deposition as a reasonable compromise, as this will allow Plaintiff to obtain the information she seeks in a streamlined fashion and would help inform additional written requests, if any, Plaintiff may seek.  Although Plaintiff rejected Defendants' offer, Plaintiff stated that she already contemplates a Rule 30(b)(6) deposition on this very topic.

## II.    Electronically Stored Information

Plaintiff also takes issue with the alleged "delay" in the parties' ESI negotiations.  (*See* ECF No. 30 at 3.)  However, Plaintiff neglects to mention the fact that her proposed second amended complaint, which is still pending with the Court, contributed to the "delay" that Plaintiff now raises.  Indeed, Defendants timely served their initial discovery responses on March 27, 2026 based on Plaintiff's first amended complaint, and when Plaintiff informed Defendants of her anticipated second amended complaint on April 13, 2026, Defendants promptly informed Plaintiff in good faith that such an amendment would slightly postpone the collection, review and production of responsive, non-privileged ESI.  Defendants must add additional search terms to encompass Plaintiff's proposed hostile work environment claim, and for efficiency purposes, it makes the most sense to run all search terms at once.  Defendants cannot undertake an extensive ESI collection and review process as Plaintiff proposes without knowing the scope of Plaintiff's claims and risking duplication of their efforts.  Accordingly, engaging in piecemeal ESI discovery under these circumstances would be inefficient, duplicative, and unnecessarily burdensome, contrary to the proportionality principles governing discovery. Until there is clarity as to the operative complaint, the far more reasonable and efficient approach is to "measure twice and cut

once" by conducting a single, comprehensive ESI collection and review based on the full scope of Plaintiff's claims.

Moreover, Defendants suggested the use of an ESI protocol as a tool to promote efficiency—not as a requirement. Defendants have no interest in unnecessarily delaying this litigation. As such, to ensure that both parties are content with the scope of Defendants' ESI review and to avoid unnecessary after-the-fact objections, Defendants proposed that both parties come to an ESI agreement at the outset. Otherwise, producing a large set of ESI documents with a list of Defendants' search terms and custodians—as Plaintiff proposed—leaves Defendants susceptible to unnecessary motion practice and potentially having to repeat its ESI efforts. To proceed in this matter would be a waste of the parties' (and the Court's) resources.

Finally, Defendants state that they remain willing to negotiate an ESI protocol with Plaintiff. As Plaintiff notes, the parties have exchanged several ESI proposals, and Defendants have conceded to many of Plaintiff's requests to date. While Plaintiff states that she provided Defendants with her ESI counterproposal on May 10, 2026 (a Sunday) and has not heard back, she neglects to mention that the undersigned counsel had an out of state arbitration last week and my co-counsel, Ashley Casey, was out of the state on vacation. I informed Plaintiff's counsel that I would respond to her by May 15, 2026 upon my return to New York, but Plaintiff's counsel nonetheless filed the instant letter request with the Court on May 14, 2026. Defendants have not abandoned the parties' ESI negotiations, nor do they have any intention of doing so.

### III.    Plaintiff's Emotional Distress Claim

Defendants also wish to raise a separate discovery issue that is noticeably absent from Plaintiff's May 18, 2026 letter; namely, the scope of Plaintiff's emotional distress claim. It is well established that "where a plaintiff seeks damages for 'garden-variety' emotional distress, the plaintiff has not put h[er] medical history in issue, nor has [s]he waived the physician-patient privilege." *Babbit v. Koeppel Nissan, Inc.*, No. 18 CV 5242, 2019 WL 3296984, at *10 (E.D.N.Y. July 23, 2019) (quoting *Misas v. North-Shore Long Island Jewish Health Sys.*, No. 14 CV 8787, 2016 WL 4082718, at *4 (S.D.N.Y. July 25, 2016)). However, absent a garden variety claim, a plaintiff may "place[] h[er] mental condition into issue[] by claiming emotional distress damages." *Manessis v. N.Y.C. Dep't of Transp.*, No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002). The nature Plaintiff's emotional distress claim in the instant matter is therefore directly relevant to the scope of discovery Defendants are entitled to pursue.

As explained in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend Her Amended Complaint, Plaintiff has teetered back and forth between significant emotional distress and garden variety emotional distress damages for months. (*See* ECF No. 27.) While Plaintiff's first two complaints included several allegations with respect to Plaintiff's purported significant emotional distress, she later instructed the Court at the parties' February 13, 2026 Initial Conference that her claim is limited to garden variety emotional distress damages. (*See* ECF No. 1 ¶¶ 57, 88; ECF No. 16 ¶¶ 65, 96-97.) Plaintiff further alluded to a garden variety emotional distress claim during good-faith meet and confers with Defendants' counsel, including on March 13, 2026 and April 10, 2026.

Despite her representations, Plaintiff filed a proposed second amended complaint with this Court on April 24, 2026 which still includes several allegations regarding Plaintiff's purported significant emotional distress. (*See* ECF No. 25-3 ¶¶ 67, 107-108.) In light of this inconsistency

in Plaintiff's position and its direct bearing on Defendants' discovery rights, Defendants raised this issue again with Plaintiff on April 27, 2026.  Defendants also inquired whether Plaintiff would be willing to sign a stipulation confirming the scope of her emotional distress claim as several district courts in the Second Circuit have required plaintiffs to do in similar circumstances.  *See, e.g.*, *Galgano v. Cnty. of Putnam*, No. 16 Civ. 3572, 2020 WL 12968021, at *1 (S.D.N.Y. Sept. 9, 2020) ("In view of plaintiff's arguably broader descriptions of his emotional distress, plaintiff may withhold [his medical provider]'s therapy records only provided that he enters into a stipulation formally disavowing any claim for non-garden variety emotional injuries"); *Walker v. Metro North Commuter R.R.,* No. 23 Civ. 9883, 2025 WL 2792594, at *5 (S.D.N.Y. Oct. 1, 2025) ("[G]iven the possibility that [plaintiff] may not agree to limit his claim to garden-variety damages, and in order to avoid potential prejudice to [defendant], the Court will require [plaintiff] to enter into a stipulation formally disavowing any claim for non-garden-variety emotional injuries") (internal quotations omitted).  After sending a follow up on May 5, 2026, Plaintiff's counsel responded on May 6, 2026, claiming that the scope of Plaintiff's emotional distress claim is already defined, and no additional stipulation or terminology is required.

However, Plaintiff again contradicted herself and represented a significant emotional distress claim in her Reply Memorandum in Support of Her Motion to Amend Her Amended Complaint, filed with this Court on May 13, 2026.  (*See* ECF No. 28.)  Specifically, Plaintiff states, "Plaintiff's allegations have been consistent from the outset: she has always stated that she suffered significant emotional distress after losing the career she held for about thirteen years." (*See id.* at 2.)  Based on Plaintiff's representations to the Court and Defendants' counsel for the past several months, this is far from the truth.

To prevent prejudice to Defendants with respect to their discovery rights and ability to defend against Plaintiff's allegations, Plaintiff should be required to definitively confirm the scope of her emotional distress claim in writing.  If Plaintiff is indeed pursuing a significant emotional distress claim and putting her emotional state at issue, Defendants are entitled to obtain a copy of Plaintiff's mental health records during the relevant time period.  However, if Plaintiff continues to foreclose Defendants from obtaining her mental health records on the basis that her claim is limited to garden variety damages, Defendants respectfully request an order directing Plaintiff to make an explicit disavowal of any non-garden-variety emotional distress claims in connection with this matter.  *See Weber v. Resource Training Ctr., Inc.*, No. CV-13-6480, 2014 WL 12971568, at *2 (E.D.N.Y. Dec. 23, 2014) ("To avoid any confusion on the point, however, plaintiff is directed to submit an affidavit disavowing any claim to non-garden variety emotional injury, expressly agreeing not to offer any privileged information or other evidence regarding any psychiatric condition she may have at trial or in connection with dispositive motion practice, and expressly agreeing not to offer any evidence at trial or in connection with dispositive motion practice").

\*          \*          \*          \*          \*

We thank Your Honor for your attention to this matter.

325976859v.2

Very truly yours,

SEYFARTH SHAW LLP

/s/ Howard M. Wexler

Howard M. Wexler


HW

325976859v.2